The opinion of the court, (Rogers, J., dissenting,) was delivered by
Huston, J.
Captain John Tremills died, leaving three children by a former wife, and leaving a widow and four children by her.
The three children by the first wife are not interested in the case in question; having, so far as appears in this cause, received their share of the' estate.
The widow administered, and being an improvident woman,, it was discovered by her agent and attorney, that she had drawn and expended more than three thousand dollars beyond her share of the estate. This estimate included the goods of her deceased husband, which had been appraised and retained unsold in her possession. At this time no guardian had been appointed for her four children.
On the 6th of April, 1813, she was dismissed from being administratrix, and Josiah Randall, Esq., appointed administrator de bonis non. ’ She was ordered to pay and deliver over to him the *145 money and goods unadmiñistered in her hands. She had previously settled an account 'of her administration, in which she had charged herself with the amount at which the personal estate was valued; and, after paying all the debts, the balance in her hands for distribution was thirteen thousand, nine hundred, and forty-nine dollars, and twenty-two cents: of this her own share, as widow, was one-third — four thousand, six hundred, and forty-nine dollars, and seventy-four cents; leaving-for the seven children, nine thousand, two hundred, and ninety-nine dollars, and forty-eight cents. This makes, for each child, one thousand, three hundred, and twenty-seven dollars, and seven cents. The eldest children by the former wife I have said were paid by her, in fact, before this 'settlement. Immediately after this settlement, oh application to the Orphans’ Court, she was appointed guardian of her four children, and the administrator de bonis non gave her a receipt for three thousand and thirty-two dollars, and ninety-seven .cents, as if paid to him by her, and immediately took a receipt from her for that same sum, as paid to her as guardian of her children, together with the further sum of two thousand dollars actually paid to her by him in cash. It is impossible not to see that this process was intended to discharge those'persons who were bail for her as administratrix.
She had still in her possession the household furniture, plate, &c. left by her husband, to which she had probably made additions to considerable amount, though there is no certainty as to their precise amount. She had also in her possession the stock on a farm near the city, and some remains of a store there. She had purchased the share of two of her husband’s eldest children, being two sevenths of a house in Sansom Street. Part of the price paid them was out of the money of her husbandls estate. A suit was at this time pending against her by one of those children, and judgment obtained for above nineteen hundred dollars, which it was evident was paid off out of the two thousand dollars, in cash, paid her by the administrator de bonis non.
It is not pretended she had any other property in her possession, except the household furniture, plate, &c. at the farmland the right to two seventh parts of this house. She had, however, just-given a receipt for'above five thousand dollars received for the use of her children, and as their guardian. She was at this time on the point of marrying; and willing, it would seem, to secure her children as far as. possible, she conveyed to her son, James M‘Carty Tremills, the two seventh parts of the house in Sansom Street, he paying her four hundred aud ninety-one dollars. She, also, in consideration of love, natural affection, and for other good causes, conveyed and transferred to her daughter, Serazine S. Tremills, all the furniture, plate, jewels, &e. in the dwelling-house, specifying each article, valued at one thousand dollars. She also conveyed to the same Serazine, arid two younger sons, W. *146 R. Tremills and F. Tremills, all the slock, consisting of cattle, farming utensils, &c. at the farm, also valued at one thousand dollars.
At this time all her children were minors.
On the 26th of April, 1814, Alexander Hampton was appointed guardian of all the four children — he sold the household property conveyed to Serazine for eleven hundred and thirty-four^dollars and eleven cents; the plate and jewellery for one thousand, four hundred and forty-four dollars, and eighty-nine cents; and the stock, &c. at the farm conveyed to Serazine, and the two younger children, for six hundred and fifty dollars. And, as there was nothing left to the mother, this is the whole those children received for their share of the personal estate: Serazine, if she got all produced by what was conveyed to her, having above eight times as much as each of the two younger, and about twice as much as the estimated value of the house conveyed to her elder brother, James M‘ Carty Tremills.
It has been contended, first, that Mrs. Tremills had a right to take the personal property at the appraised price, according to the inventory — to consider it as a part of'her widow’s share of her husband’s estate, and, having intended so to take it, it became hers absolutely, and she could dispose of it as she pleased; that at the time she conveyed it to Serazine, it had been several years in her possession, and she might have sold any article of it, or it might have been levied on and sold on an execution against her for her own debt.
I do not admit that an executor or administrator can generally take the personal goods of the testator or intestate at the appraisement, without being liable to either heirs or creditors for their full value. I admit that an executor or administrator may fairly sell any article of personal estate held by them as executors or administrators, and that an execution may be levied on it, if in their possession, and it may be sold, and cannot, in either case, be followed and recovered by the heir or creditor as goods of the testator. This, however, is only true when fairly sold by the executor, or fairly levied on and sold by a creditor of his, and is not true when fraudulently given by the executor to pay his own debt, to a person who knows it is not the executor’s own goods, but the testator’s, and as long as the goods remain in specie in the hands of the executor, they are not his until he has paid to the creditors or heirs the value of them.
This case does not require me to go more minutely into these distinctions, — it is very peculiar, and we have a positive law on the subject. By our act of the 4th of April, 1797, 3 Smith’s Laws, 297, an administrator or executor, on settling his account and paying over the balance in his hands, and surrendering the residue of his estate to such person as shall be appointed to succeed him, may be discharged from the further administration of the estate — ■ *147 this at his own request, — or may, on complaint, &c. be dismissed by the court, who are authorized to compel a settlement of his or her account, to order him to deliver over and pay to the successor all and every the goods, chattels, rights and credits, tjtle deeds, evidence, and securities, which were of the decedent, and which came to his or her hands, and remain unadministered, and to account for all the goods and chattels rights and credits, which have been previously administered, &c.; and, if such executor or administrator shall refuse or neglect to comply with the order of the court touching the premises, the court, on motion, shall proceed against him or' them as is lawful in cases of contempt, or the succeeding administrator may proceed at law against him or them, or their sureties, or against any other person or persons who may be possessed thereof, for the recovering thereof; or both the said remedies may be pursued at the same time, if the case so require, until the end is fully attained.”
Under this law, then, the administrator de bonis non could— and, if it had not been for the arrangement made with her, must at his peril have proceeded to obtain possession of those goods, or'the price of them. When she gave him the receipt, she took them as money due her children. I cannot pass over this transaction without expressing my astonishment that any Orphans’ Court in Pennsylvania should ever have appointed an administratrix just dismissed, guardian of those minors whose money was in his or her hands, and this without security. She, however, considered the property as theirs, and so she told Mr. Peters, and declared her intention to convey it, to secure them; but they were equally entitled to it. Can an executor, who has goods of the testator in his hands, charge himself with it, and then divide it unequally among the legatees or heirs, who have been left equal shares; or can a guardian, who represents several minors, receive their money or personal property, and, being insolvent, give it all to one, and nothing to the others? If so, the right of devising, and the statute of distributions are worth little.
This is not the ease of a sale, or disposition to a third and innocent person. It is true, she was indebted to each of them, but to James she conveyed more than she owed, and to Serazine she conveyed double what she owed. This overplus was a gift of what was not her own — a gift, by. a person indebted to her two youngest children. It is true, James and Serazine were of too tender an age to be guilty of fraud in a criminal sense, in .accepting these conveyances, and this property; but when, at more mature age, they by themselves or guardians claim to hold it, we cannot consider them as either innocent or fair purchasers. Both the guardian and ward must know, that to divest two younger children of their property, and give it to two elder, will require more than the clumsy process of a deed of gift by the guardian to the two latter.
I do not consider the testimony of Mr. Peters, as to her decía *148 rations that she designed an equal division of the property among her children, material in this case; but it was clearly admissible for several reasons. The counsel of James and Serazine had produced and relied on his statement in .a letter to Mrs. Tremills. His testimony was proper to show how far she acceded to and agreed to that statement, — it was more material how she considered this property than how he as her attorney considered it. It was also material to give the court information of the exact state of the whole transaction — of the sums, times, and ways in which these funds had been disposed of, and to rebut the allegation that she had ever considered this personal property as her own. To prove a trust, also, is one of those cases in which parol evidence is admissible.
I have felt more difficulty as to the house conveyed to James, than the personal property conveyed to Serazine; but, as we have positive proof that nine hundred and ninety dollars, part of the price, was paid out of the general land of the heirs: and very strong presumptive proof that the two thousand dollars received from the administrator de bonis non went to discharge a judgment to one of the persons from whom she bought it. I think the house, also, is to be considered the joint property of the four children.
The opinion of the court is, that, under the circumstances proved in this case, Mrs. Tremills had no power to divide the property in her hands, as guardian of her four children, in the manner she did. It was not her own property, but the property of the children, and of the children equally, and must be so divided among them.
We confirm the decision of the Orphans’ Court, as to the allowance to Mr. Hampton. As the sums awarded to each will now be different from those decreed, the order of the Orphans’ Court as to the interest due Serazine, will be inapplicable to this case. But we adopt the principle on which the Orphans’ Court proceeded; and the guardian must pay interest on the sum awarded to each.